**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

---

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.,*[1] | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |

---

| | |
|---|---|
| LUC A. DESPINS, CHAPTER 11 TRUSTEE, | |
| | Adv. Proceeding No. 24-05225 |
| Plaintiff, | **Ref. Adv. D.I. 1** |
| v. | |
| CIRRUS DESIGN CORPORATION and QIANG GUO, | |
| Defendants. | |

---

## CIRRUS DESIGN CORPORATION'S ANSWER TO COMPLAINT

Cirrus Design Corporation ("Cirrus") by and through its undersigned counsel, hereby responds to the adversary complaint [Adv. D.I. 1] (the "Complaint") filed by Luc A Despins, the Chapter 11 Trustee (the "Trustee" or "Plaintiff") in the above-captioned adversary proceeding (the "Adversary Proceeding") and respectfully states as follows:

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## NATURE OF ACTION

1.      The Trustee commences this adversary proceeding under Title 11 of the United States Code (the "Bankruptcy Code") to avoid and recover transfers of the Debtor's property prior to the commencement of this Chapter 11 Case.

**ANSWER:** Paragraph 1 purports to characterize the nature of the action, and therefore requires no response. To the extent a response is required, Cirrus denies that the transfers at issue were transfers of the Debtor's property.  Any remaining allegations in Paragraph 1 are denied.

2.      The Debtor, through his alter ego shell companies, HCHK Technologies, Inc. ("HCHK Technologies"), Leading Shine NY Ltd. ("Leading Shine"), and Lamp Capital LLC ("Lamp Capital"), transferred funds in the amount of $3,915,140.00 prior to the Petition Date (as defined herein) to Cirrus as initial transferee.

**ANSWER:** Paragraph 2 contains legal conclusions that require no response. To the extent a response is required, Cirrus admits that it sold two aircraft, an SF50 Vision Jet and an SR22T, and that in exchange for those aircraft, Cirrus received $4,356,600, which included payments of $281,460.00 from Lamp Capital LLC, $345,000 and $500,000 from Leading Shine NY Ltd., and $1,788,680.00 and $1,000,000 from HCHK Technologies Inc. Cirrus denies that HCHK Technologies, Leading Shine, and Lamp Capital are alter egos of the Debtor.  Any remaining allegations in Paragraph 2 are denied.

3.      These transfers were actually fraudulent, because the Debtor effectuated them as part of his "shell game," and they were made with the intent to hinder, delay, and/or defraud the Debtor's creditors. Alternatively, these transfers were constructively fraudulent, because they were made when the Debtor was insolvent, and the Debtor did not receive reasonably equivalent value in consideration thereof.

**ANSWER:** Cirrus denies the allegations in Paragraph 3.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

**ANSWER:** Paragraph 4 states a legal conclusion that requires no response. To the extent a response is required, Cirrus admits the allegations in Paragraph 4.

5.      This adversary proceeding has been referred to this Court pursuant to 28 U.S.C. § 157(a).

**ANSWER:** Paragraph 5 states a legal conclusion that requires no response. To the extent a response is required, Cirrus admits the allegations in Paragraph 5.

6.      The statutory predicates for the relief sought herein include sections 544, 548, and 550 of the Bankruptcy Code and New York Debtor & Creditor Law sections 273, 274, and 276[2] or any other applicable state law equivalents.

**ANSWER:** Paragraph 6 states a legal conclusion that requires no response. To the extent a response is required, Cirrus denies the allegations in Paragraph 6.

### THE PARTIES

7.      The Trustee is the chapter 11 trustee in the Chapter 11 Case pursuant to the Bankruptcy Court's order entered on July 8, 2022 [Case No. 22-50073 (the "Main Case") Docket No. 523].

**ANSWER:** Paragraph 7 purports to characterize the procedural history in this bankruptcy proceeding and does not require a response. To the extent a response is required, Cirrus refers the Trustee to the relevant court orders, which speak for themselves.

8.      Cirrus is a Wisconsin corporation with an address and place of business at 4515 Taylor Circle, Duluth, Minnesota 55811-1548.

**ANSWER:** Cirrus admits the allegations in Paragraph 8.

9.      Qiang Guo is an individual residing at Flat 6, 5 Princes Gate, London SW7 1QJ.

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 9. Cirrus therefore denies the allegations.

---

[2]    All statutory references to New York Debtor and Creditor Law will hereinafter be referred to as "N.Y. Debt. & Cred. Law". The New York Uniform Voidable Transactions Act ("NYUVT") replaced the New York Uniform Fraudulent Conveyance Act ("NYUFC") and became effective on April 4, 2020 and applies to transfers made or obligations incurred on or after April 4, 2020. With respect to transfers prior to April 4, 2020, the Trustee seeks relief in this action under the NYUFC and N.Y. Debt. & Cred. Law §§ 273, 273-a, 274, 275, 276 and 278.

10.     Qiang Guo is the Debtor's son.

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in

Paragraph 10. Cirrus therefore denies the allegations.

**FACTS**

A.     **Chapter 11 Case**

11.     The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy
Code on February 15, 2022 (the "Petition Date") in the United States Bankruptcy Court for the
District of Connecticut (the "Bankruptcy Court"), thus commencing the Chapter 11 Case.

**ANSWER:** Paragraph 11 purports to characterize the procedural history in this bankruptcy

proceeding and does not require a response. To the extent a response is required, Cirrus refers the

Trustee to the relevant court filings, which speak for themselves.

12.     On March 21, 2022, the Office of the United States Trustee appointed an Official
Committee of Unsecured Creditors in this Chapter 11 Case. No examiner has been appointed.

**ANSWER:** Paragraph 12 purports to characterize the procedural history in this bankruptcy

proceeding and does not require a response. To the extent a response is required, Cirrus refers the

Trustee to the relevant court filings, which speak for themselves.

13.     The Debtor's bankruptcy schedules, filed in March 2022 with the Bankruptcy
Court, claimed that he owned $3,850 in assets and had incurred hundreds of millions of dollars of
liabilities.[3] While the Debtor was, indeed, deeply indebted, his schedules failed to disclose the
Debtor's property as held and/or transferred through his many alter ego shell companies, including,
HCHK Technologies.

**ANSWER:** Cirrus denies that HCHK Technologies is an alter ego of the Debtor. Cirrus lacks

sufficient knowledge or information to affirm or deny the remaining allegations in Paragraph 13.

Cirrus therefore denies the remaining allegations. Cirrus also refers the Trustee to the relevant

court filings, which speak for themselves.

14.     On June 15, 2022, the Bankruptcy Court entered a memorandum of decision and
order [Main Case Docket No. 465] directing the United States Trustee to appoint a chapter 11

---

[3]     Schedule of Assets and Liabilities, at 1 [Main Case Docket No. 78].

trustee in the Chapter 11 Case. Pursuant to this order, the United States Trustee selected Luc A. Despins as the Trustee. On July 8, 2022, the Bankruptcy Court entered an order granting the appointment of Luc A. Despins as the Trustee in the Chapter 11 Case [Main Case Docket No. 523].

**ANSWER:** Paragraph 14 purports to characterize the procedural history in this bankruptcy proceeding and does not require a response. To the extent a response is required, Cirrus refers the Trustee to the relevant court orders, which speak for themselves.

### B.    Debtor's Use of Shell Companies and Trustee's Adversary Proceedings

15.    HCHK Technologies, Leading Shine, and Lamp Capital are among the numerous alter ego shell companies used by the Debtor to hinder, delay, and/or defraud his creditors.[4] For years, the Debtor has orchestrated a "shell game," employing a convoluted web of shell companies, nominally owned by family members, lieutenants, and/or subordinates, but in reality, controlled by the Debtor. This shell game enabled the Debtor to use and spend and/or transfer millions of dollars of cash and other assets—while concealing his property from creditors.

**ANSWER:** Cirrus denies that HCHK Technologies, Leading Shine, and Lamp Capital are alter egos of the Debtor, and it denies that Cirrus is bound by the proceedings referenced in footnote 4, in which it did not participate.  Cirrus lacks sufficient knowledge or information to affirm or deny the remaining allegations in Paragraph 15. Cirrus therefore denies the remaining allegations.

16.    Since his appointment, the Trustee has commenced a number of adversary proceedings in the Chapter 11 Case to, among other things, establish that the Debtor's shell companies were his alter egos and/or that such companies and their assets were equitably owned

---

[4]    Default has entered against HCHK Technologies in the adversary proceeding *Despins v. HCHK Technologies, Inc., et. al (*Adv. Proc. No. 23-5013 (the "HCHK Entities A.P."), Docket No. 139), which adversary proceeding seeks, among other things, a declaratory judgment that HCHK Technologies is the alter ego of the Debtor. The Trustee incorporates by reference herein, the Trustee's Complaint filed in the HCHK Entities A.P. (Adv. Proc. No. 23-5013, Docket No. 1).

Default has entered against Leading Shine in the adversary proceeding *Despins v. Lamp Capital LLC, et al.* (Adv. Proc. No. 23-5023 (the "Lamp Capital A.P."), Docket No. 13), which adversary proceeding seeks, among other things, a declaratory judgment that Leading Shine was the alter ego of the Debtor. The Trustee incorporates by reference herein, the Trustee's Complaint filed in the Lamp Capital A.P. (Adv. Proc. No. 23-5023, Docket No. 1).

The Court has entered judgment to the effect that Lamp Capital was the Debtor's alter ego. *See Despins v. Lamp Capital LLC, et al.* (Adv. Proc. No. 23-5023 (the "Lamp Capital A.P."), Docket No. 66). The Trustee incorporates by reference herein, the Trustee's Complaint filed in the Lamp Capital A.P. (Adv. Proc. No. 23-5023, Docket No. 1).

by the Debtor and in several such adversary proceedings the Bankruptcy Court has already granted such relief.[5]

**ANSWER:** Paragraph 16 purports to characterize the procedural history in this bankruptcy proceeding and does not require a response. To the extent a response is required, Cirrus refers the Trustee to the relevant legal filings and court orders, which speak for themselves.

17.    The fact patterns in these litigations consistently involve: (i) Debtor-controlled shell companies held by close family members and/or subordinates, (ii) assets purchased with cash from other Debtor-controlled entities and/or transferred to and among shell entities for no consideration, and (iii) the Debtor benefiting from and having control and dominion over such assets.

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 17. Cirrus therefore denies the allegations.

## C.    Debtor's Conduct to Hinder, Delay, and/or Defraud Creditors

18.    In addition to the matters addressed in the Trustee's adversary proceedings, the Bankruptcy Court has found that the Debtor was the beneficial owner of Ace Decade Limited (and through it, Dawn State Limited) and that the Debtor controlled and employed Ace Decade Limited's nominee shareholder, Yvette Wang.[6]

**ANSWER:** Paragraph 18 purports to characterize the procedural history in this bankruptcy proceeding and does not require a response. To the extent a response is required, Cirrus refers the Trustee to the relevant court orders, which speak for themselves. Cirrus denies that it is bound by decisions made without its participation.

19.    The Bankruptcy Court has also found that the "G Entities" (Gettr, G Fashion, G Music, GClubs, GNews and GEdu), the New Federal State of China and the Rule of Law Foundation, as well as other purportedly independent entities and organizations, were controlled

---

[5]    These include the following adversary proceedings: (i) Luc A. Despins, Chapter 11 Trustee v. HK International Funds Investments (USA) Limited, LLC, et al. [Adv. Proc. No. 22-05003]; (ii) Luc A. Despins, Chapter 11 Trustee v. Greenwich Land LLC, et al. [Adv. Proc. No. 23-05005]; (iii) Luc A. Despins, Chapter 11 Trustee v. Mei Guo [Adv. Proc. No. 23-05008]; (iv) Luc A. Despins, Chapter 11 Trustee v. HCHK Technologies, Inc., et al. [Adv. Proc. No. 23-05013]; (v) Luc A. Despins, Chapter 11 Trustee v. Taurus Fund LLC, et al. [Adv. Proc. No. 23-05017]; (vi) Luc A. Despins, Chapter 11 Trustee v. Golden Spring (New York) Limited [Adv. Proc. No. 23−05018]; and (vii) Luc A. Despins, Chapter 11 Trustee v. Lamp Capital LLC, et al. [Adv. Proc. 23-05023].

[6]    Order Granting Motion to Hold Debtor in Contempt of Corporate Governance Order, ¶¶ 1, 4 (Jan. 24, 2023, Docket No. 1372 ("Corp. Governance Contempt Order").

by the Debtor[7], led by the Debtor[8] and/or served "the purposes of... and as business vehicles of" the Debtor.[9]

**ANSWER:** Paragraph 19 purports to characterize the procedural history in this bankruptcy proceeding and does not require a response. To the extent a response is required, Cirrus refers the Trustee to the relevant court orders, which speak for themselves. Cirrus denies that it is bound by decisions made without its participation.

20.    Prior to the Petition Date, Judge Liman of the United States District Court for the Southern District of New York found that Eastern Profit Corporation Limited, an entity originally owned by one of the Debtor's chefs before its transfer to Debtor's daughter, was "in essence, a shell corporation" for the Debtor.[10]

**ANSWER:** Paragraph 20 purports to characterize procedural history prior to this bankruptcy proceeding and does not require a response. To the extent a response is required, Cirrus refers the Trustee to the relevant court orders, which speak for themselves. Cirrus denies that it is bound by decisions made without its participation.

21.    The Debtor has gone to great lengths to hinder and delay the collection efforts of one of his largest creditors, i.e., Pacific Alliance Asia Opportunity Fund, L.P. ("PAX"). In 2017, PAX sued the Debtor in the Supreme Court of the State of New York (the "New York Court"), Index No. 652077/2017 (the "PAX Case"), seeking judgment for monies owed. On February 3, 2021, PAX obtained a judgment from the New York Court against the Debtor in the sum of $116,402,019.57 (the "PAX Judgment"). PAX sought to enforce the PAX Judgment by levying the Debtor's assets—including the Lady May, which the Debtor falsely claimed was owned by his daughter, and the Debtor's luxury apartment in Manhattan, which the Debtor falsely claimed was held in trust for the Debtor's son. The Debtor's defiance of New York Court orders in post-judgment proceedings eventually resulted in the Debtor incurring contempt penalties of $134 million.

---

[7]    *Corrected Memorandum of Decision Granting in Part Motion for Preliminary Injunction,* ¶ 3 (Adv. Proc. No. 22-05032, January 13, 2023 ("The Debtor also controls Saraca Media Group and a related entity 'GTV'").

[8]    *Id.* at ¶ 7 ("The Debtor is the leader of The Whistleblower Movement, NFSC, ROLF and Himalaya.").

[9]    *Id.* ("The Whistleblower Movement, NFSC, ROLF, GSeries, and Himalaya serve the purposes of the Debtor, serve as business vehicles for the Debtor, and their members are personally loyal to the Debtor.").

[10]    *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC,* No. 18-CV-2185 (LJL) 2021 WL 2554631, at *1 (S.D.N.Y. June 22, 2021).

**ANSWER:** Paragraph 21 purports to characterize procedural history prior to this bankruptcy proceeding and does not require a response. To the extent a response is required, Cirrus refers the Trustee to the relevant court filings and court orders, which speak for themselves. Cirrus lacks sufficient knowledge or information to affirm or deny any remaining allegations in Paragraph 21. Cirrus therefore denies the allegations.

22.     The Debtor also used his alter egos, including HCHK Technologies, Leading Shine, and Lamp Capital, as personal piggy-banks, funding the lavish lifestyle to which he and his family had become accustomed, while concealing assets in these alter egos from his creditors and hindering and delaying creditors from recoveries on their claims. The transfers that the Debtor effectuated through these alter egos perpetuated the Debtor's fraudulent scheme.

**ANSWER:** Cirrus denies that HCHK Technologies, Leading Shine, and Lamp Capital are alter egos of the Debtor. Cirrus lacks sufficient knowledge or information to affirm or deny the remaining allegations in Paragraph 22. Cirrus therefore denies the allegations.

23.     The Debtor has testified before the Bankruptcy Court that he has insufficient assets to pay his liabilities and that his luxurious lifestyle is funded by his family through businesses nominally held by family members.[11] The Debtor scheduled only $3,850 in assets.[12]

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in paragraph 23. Cirrus therefore denies the allegations. Cirrus also refers the Trustee to the relevant court filings, which speak for themselves.

24.     In March 2023, the Debtor was arrested and remains confined pending his trial on federal criminal charges of, among other things, wire fraud, securities fraud, and money laundering.

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 24. Cirrus therefore denies the allegations.

---

[11]  Hearing on Debtor's Motion for Entry of Interim and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing and (II) Scheduling Interim and Final Hearings, and (III) Granting Related Relief (Main Case, April 27, 2022)

[12]  *See* n.3

25.     In its criminal indictment of the Debtor, the United States Government asserts that the Debtor and his co-defendants "utilized more than approximately 500 accounts held in the names of *at least 80 different entities or individuals* to launder more than $1 billion in fraud proceeds."[13]

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 25 and, therefore, denies the allegations. Cirrus refers the Trustee to the relevant court filings, which speak for themselves.

26.     The property of the Debtor's alter egos, including HCHK Technologies, Lamp Capital, and Leading Shine, was at all times prior to the Petition Date property of the Debtor.

**ANSWER:** Cirrus denies that HCHK Technologies, Leading Shine, and Lamp Capital are alter egos of the Debtor. Paragraph 26 otherwise states a legal conclusion that requires no response. To the extent a response is required, Cirrus denies the allegations.

27.     At all times relevant herein, the Debtor conducted business in New York, New York, including direction of the prepetition transfers at issue in this Complaint.

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegation in Paragraph 27. Cirrus therefore denies the allegations.

**D.      Transfers Made with Intent to Hinder, Delay, or Defraud Creditors**

28.     The Transfers (as defined herein) at issue in this Complaint were made with the intent to hinder, delay, and/or defraud the Debtor's creditors inasmuch as they were all made through the Debtor's alter-ego shell companies operated as a part of the Debtor's shell game.

**ANSWER:** Cirrus denies that HCHK Technologies, Leading Shine, and Lamp Capital are alter egos of the Debtor. Paragraph 28 otherwise states a legal conclusion that requires no response. To the extent a response is required, Cirrus denies the allegations.

29.     The Debtor intentionally orchestrated his financial affairs in this manner in order to conceal and dissipate millions of dollars in assets while falsely pleading poverty to his many

---

[13]  *See* Memorandum of Law of the United States of America in Opposition to Defendant Yanping Wang's Motion for Pretrial Release at 29, attached as Exhibit B in the Reply of Chapter 11 Trustee to G Club Operations LLC's Supplemental Objection to Trustee's Motion to Compel and Request for Related Relief (June 23, 2023, Main Case Docket No. 1934).

creditors. The Debtor claimed to be destitute while simultaneously spending heavily to maintain a billionaire lifestyle for himself and for his family members and close associates.

**ANSWER:** Paragraph 29 states a legal conclusion that requires no response. To the extent a response is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 29. Cirrus therefore denies the allegations.

30.     The assets concealed and dissipated by the Debtor included funds that he obtained from the victims of his cryptocurrency, securities, and other fraud schemes. As a result of this conduct, the Debtor faces multiple felony fraud, money laundering, and racketeering charges in a criminal case pending in the U.S. District Court for the Southern District of New York. *See United States v. Ho Wan Kwok,* case no. 1:23-cr-00118-AT [ECF No. 215] (Jan. 3, 2024 S.D.N.Y.).

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 30. Cirrus therefore denies the allegations. Cirrus also refers the Trustee to the relevant court filings, which speak for themselves.

31.     The Debtor knew and intended that by concealing and dissipating his assets in this manner there would not be sufficient assets remaining to repay his creditors—including the many victims of his frauds. These transfers were thus necessarily made with the intent to hinder, delay, and/or defraud the Debtor's creditors.

**ANSWER:** Paragraph 30 states a legal conclusion that requires no response. To the extent a response is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in paragraph 31. Cirrus therefore denies the allegations.

32.     Cirrus manufactures and sells aircraft for private use, including light sport aircraft and light jet aircraft.

**ANSWER:** Cirrus denies that it manufactures and sells light sport aircraft. Cirrus admits the remaining allegations in Paragraph 32.

33.     The Transfers at issue in this Complaint funded costs in connection with the purchase of two aircraft, *i.e.,* an SR22 single-engine propeller aircraft and an SF50 light jet aircraft (collectively, the "Aircraft").

**ANSWER:** Cirrus admits that in exchange for an SR 22 single-engine propeller craft and an SF50 light jet aircraft, it received $4,356,600, which included a payment of $281,460.00 from Lamp

Capital LLC, payments of $345,000 and $500,000 from Leading Shine NY Ltd., and payments of $1,788,680.00 and $1,000,000 from HCHK Technologies Inc. Cirrus lacks sufficient knowledge or information to affirm or deny whether any of the payments were made by the Debtor. Cirrus therefore denies that allegation.

34.    The Aircraft were purchased for the benefit of Qiang Guo, the Debtor's son.

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 34. Cirrus therefore denies the allegations.

35.    Qiang Guo has participated in many of the Debtor's fraudulent schemes, including, among other things, illegal securities offerings, fraudulent cryptocurrency ventures, and the Debtor's "G Club" scheme. Qiang Guo has also assisted the Debtor in laundering and concealing the Debtor's assets to hinder, delay, or defraud the Debtor's creditors.

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 35. Cirrus therefore denies the allegations.

36.    In the course of this involvement, Qiang Guo traveled to the United States. Qiang Guo has also benefited from transfers of funds that originated from within the United States, including the Transfers at issue in this Complaint.

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 36. Cirrus therefore denies the allegations.

37.    Qiang Guo has had use and enjoyment of the Aircraft since they were purchased.

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 37. Cirrus therefore denies the allegations.

38.    The Debtor received no consideration in exchange for the Transfers.

**ANSWER:** Paragraph 38 states a legal conclusion that requires no response. To the extent a response is required, Cirrus denies the allegations. Cirrus provided reasonably equivalent value in exchange for the payments for the Aircraft—namely, the SR 22 single-engine propeller craft and an SF50 light jet aircraft.

**E.**    **Transfers to Cirrus**

39.    Prior to the Petition Date, the Debtor, using his alter ego shell companies, HCHK Technologies, Leading Shine, and Lamp Capital, or otherwise, transferred the Debtor's property to Cirrus (collectively, the "Transfers"), including, without limitation, as follows:

See **SCHEDULE A** attached hereto and made a part hereof.

**ANSWER:** Cirrus denies that HCHK Technologies, Leading Shine, and Lamp Capital are alter egos of the Debtor. Paragraph 39 otherwise states a legal conclusion that requires no response. To the extent a response is required, Cirrus denies the allegations. Cirrus admits that it received the payments outlined in Schedule A to the Complaint. Cirrus lacks sufficient knowledge or information to affirm or deny whether any of those payments were made by the Debtor. Cirrus therefore denies that allegation.

40.    At the time of the Transfers, the Debtor had outstanding obligations to creditors of the Debtor's estate.

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 40. Cirrus therefore denies the allegations.

41.    Cirrus was the initial transferee of the Transfers.

**ANSWER:** Paragraph 41 states a legal conclusion that requires no response. To the extent a response is required, Cirrus denies the allegations. Cirrus lacks sufficient knowledge or information to affirm or deny whether any of the payments were made by the Debtor. Cirrus therefore denies that allegation.

42.    Guo was the individual for whose benefit the Transfers were made.

**ANSWER:** Paragraph 42 states a legal conclusion that requires no response. To the extent a response is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations. Cirrus therefore denies the allegations. Cirrus lacks sufficient knowledge or

information to affirm or deny whether any of the payments were made by the Debtor. Cirrus therefore denies that allegation.

## **FIRST CLAIM**

### **(Claim Against Cirrus to Avoid and Recover Actual Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(A) and 550(a))**

43.    The Trustee repeats and realleges the allegations contained in paragraphs 1-42 as if fully set forth herein.

**ANSWER:** Cirrus repeats and incorporates by reference its responses to the preceding allegations as if fully set forth herein.

44.    The Transfers were made by the Debtor through his alter egos, HCHK Technologies, Leading Shine, and Lamp Capital, with the actual intent to hinder, delay and/or defraud his creditors.

**ANSWER:** Cirrus denies that HCHK Technologies, Leading Shine, and Lamp Capital are alter egos of the Debtor. Paragraph 44 otherwise states a legal conclusion that requires no response. To the extent a response is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations. Cirrus therefore denies the allegations.

45.    The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Transfers is shown by, among other things:

     a.    The Transfers were effectuated using an alter ego shell company;

     b.    The Transfers were concealed from the Debtor's creditors;

     c.    The Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

     d.    The Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

     e.    The Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

     f.    At the time of the Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

     g.    At the time of the Transfers, the Debtor was insolvent or undercapitalized.

**ANSWER:** Cirrus denies that HCHK Technologies, Leading Shine, and Lamp Capital are alter egos of the Debtor. Paragraph 45 otherwise states a legal conclusion that requires no response. To the extent a response is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 45. Cirrus therefore denies the allegations.

46.     The Transfers are avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

**ANSWER:** Cirrus denies the allegations.

## SECOND CLAIM

**(Claim Against Cirrus to Avoid and Recover Actual Fraudulent Transfers pursuant to N.Y. Debt. & Cred. Law sections 273, 274, and 276, and Bankruptcy Code sections 544(b) and 550(a))**

47.     The Trustee repeats and realleges the allegations contained in paragraphs 1-42 as if fully set forth herein.

**ANSWER:** Cirrus repeats and incorporates by reference its responses to the preceding allegations as if fully set forth herein.

48.     The Transfers were made by the Debtor, through his alter ego, HCHK Technologies, Leading Shine, and Lamp Capital, with the actual intent to hinder, delay and/or defraud his creditors.

**ANSWER:** Cirrus denies that HCHK Technologies, Leading Shine, and Lamp Capital are alter egos of the Debtor. Paragraph 48 otherwise states a legal conclusion that requires no response. To the extent a response is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations. Cirrus therefore denies the allegations.

49.     The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Transfers is shown by, among other things:

      a.     The Transfers were effectuated using an alter ego shell company;
      b.     The Transfers were concealed from the Debtor's creditors;
      c.     The Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

      d.    The Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

      e.    The Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

      f.    At the time of the Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

      g.    At the time of the Transfers, the Debtor was insolvent or undercapitalized.

**ANSWER:** Cirrus denies that HCHK Technologies, Leading Shine, and Lamp Capital are alter egos of the Debtor. Paragraph 49 otherwise states a legal conclusion that requires no response. To the extent a response is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 49. Cirrus therefore denies the allegations.

50.    The Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(1), 274, and 276, and section 544(b) of the Bankruptcy Code and recoverable pursuant to section 550(a) of the Bankruptcy Code.

**ANSWER:** Paragraph 50 states a legal conclusion that requires no response. To the extent a response is required, Cirrus denies the allegations.

### THIRD CLAIM

**(Claim Against Cirrus to Avoid and Recover Constructive Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(B) and 550(a))**

51.    The Trustee repeats and realleges the allegations contained in paragraphs 1-42 as if fully set forth herein.

**ANSWER:** Cirrus repeats and incorporates by reference its responses to the preceding allegations as if fully set forth herein.

52.    The Debtor received less than a reasonably equivalent value in exchange for the Transfers.

**ANSWER:** Cirrus denies the allegations. Cirrus transferred the SR 22 single-engine propeller craft and the SF50 light jet aircraft in exchange for the payments it received.

53.    At the time of the Transfers, the Debtor was insolvent or became insolvent as a result of the Transfers.

**ANSWER:** Paragraph 53 states a legal conclusion that requires no response. To the extent one is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations. Cirrus therefore denies the allegations.

54.    At the time of the Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small amount of capital.

**ANSWER:** Paragraph 54 states a legal conclusion that requires no response. To the extent a response is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations. Cirrus therefore denies the allegations.

55.    At the time of the Transfers, the Debtor intended to incur or believed he would incur, debts that would be beyond his ability to pay as such debts matured.

**ANSWER:** Paragraph 55 states a legal conclusion that requires no response. To the extent a response is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 55. Cirrus therefore denies the allegations.

56.    The Transfers constitute fraudulent transfers and are avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

**ANSWER:** Paragraph 56 states a legal conclusion that requires no response. To the extent a response is required, Cirrus denies the allegations.

## FOURTH CLAIM

**(Claim Against Cirrus to Avoid and Recover Constructive Fraudulent Transfers Pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and Bankruptcy Code sections 544(b) and 550(a))**

57.    The Trustee repeats and realleges the allegations contained in paragraphs 1-42 as if fully set forth herein.

**ANSWER:** Cirrus repeats and incorporates by reference its responses to the preceding allegations as if fully set forth herein.

58.     The Debtor did not receive reasonably equivalent value in exchange for the Transfers.

**ANSWER:** Cirrus denies the allegations. Cirrus transferred the SR 22 single-engine propeller craft and the SF50 light jet aircraft in exchange for the payments it received.

59.     At the time of the Transfers, the Debtor was insolvent or the Debtor became insolvent as a result of the Transfers.

**ANSWER:** Paragraph 59 states a legal conclusion that requires no response. To the extent a response is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations. Cirrus therefore denies the allegations.

60.     At the time of the Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction which any property remaining with the Debtor was an unreasonably small amount of capital.

**ANSWER:** Paragraph 60 states a legal conclusion that requires no response. To the extent one is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations. Cirrus therefore denies the allegations.

61.     At the time of the Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts that would be beyond his ability to pay as such debt matured.

**ANSWER:** Cirrus lacks sufficient knowledge or information to affirm or deny the allegations in Paragraph 61. Cirrus therefore denies the allegations.

62.     The Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and section 544(b) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

**ANSWER:** Paragraph 62 states a legal conclusion that requires no response. To the extent a response is required, Cirrus denies the allegations.

## FIFTH CLAIM

**(Claim Against Qiang Guo to Recover Transfers for the Benefit of Qiang Guo Pursuant to Bankruptcy Code section 550(a))**

63.    The Trustee repeats and realleges the allegations contained in paragraphs 1-42 as if fully set forth herein.

**ANSWER:** Cirrus repeats and incorporates by reference its responses to the preceding allegations as if fully set forth herein.

64.    Qiang Guo was the party for whose benefit the Transfers were made, because Qiang Guo obtained the use and enjoyment of the Aircraft.

**ANSWER:** Paragraph 64 states a legal conclusion that requires no response. To the extent a response is required, Cirrus lacks sufficient knowledge or information to affirm or deny the allegations. Cirrus therefore denies the allegations.

65.    To the extent that the Transfers are avoided, without waiver of the Trustee's claims to recover the value from Cirrus, the value of the Transfers is recoverable against Qiang Guo.

**ANSWER:** Paragraph 65 states a legal conclusion that requires no response.

*[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK.]*

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that judgment be entered as follows:

1.       On the First Claim, (a) an order declaring that the Transfers in an amount not less than $3,915,140.00 are avoided pursuant to section 548(a)(1)(A) of the Bankruptcy Code; (b) an order directing that the Transfers be set aside; and (c) recovery of the Transfers, or the value thereof at the Trustee's option, from Cirrus for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

2.       On the Second Claim, (a) an order declaring that the Transfers in an amount not less than $3,915,140.00 are avoided pursuant to section 544(b) of the Bankruptcy Code and N.Y. Debt & Cred. Law sections 273(a)(1), 274, and 276 and, with respect to transfers prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the Transfers be set aside; and (c) recovery of the Transfers, or the value thereof at the Trustee's option, from Cirrus for the benefit of the Debtor's estate pursuant to N.Y. Debt. & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

3.       On the Third Claim, (a) an order declaring that the Transfers in an amount not less than $3,915,140.00 are avoided pursuant to section 548(a)(1)(B) of the Bankruptcy Code; (b) an order directing that the Transfers be set aside; and (c) recovery of the Transfers, or the value thereof at the Trustee's option, from Cirrus for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

4.       On the Fourth Claim, (a) an order declaring that the Transfers in an amount not less than $3,915,140.00 are avoided pursuant to section 544(b) of the Bankruptcy Code and N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and, with respect to transfers prior to April 4, 2020,

N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the Transfers be set aside; and (c) recovery of the Transfers, or the value thereof at the Trustee's option, from Cirrus for the benefit of the Debtor's estate pursuant to N.Y. Debt & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

5.      On the Fifth Claim, (a) an order declaring that the Transfers are recoverable by the Trustee pursuant to section 550(a) of the Bankruptcy Code and (b) recovery of the value of the Transfers in the amount of $3,915,140.00 from Qiang Guo, for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

6.      Awarding the Trustee pre-judgment interest at the maximum legal rate from the date of the filing of this Complaint to the date of judgment herein; and

7.      Such other and further relief as the Court may deem just, proper, or equitable under the circumstances.

## GENERAL DENIAL

Except as otherwise expressly stated in Paragraphs 1 through 65 above, Cirrus denies each and every allegation in Paragraphs 1 through 65 of the Complaint, including, without limitation, the headings, sub-headings, and footnotes contained therein, and specifically denies that Plaintiff is entitled to the relief sought in Plaintiff's prayer for relief. Pursuant to Rule 8(b)(3) of the Federal Rules of Civil Procedure, as incorporated by Rule 7008 of the Federal Rules of Bankruptcy Procedure, allegations contained in the Complaint to which no responsive pleading is required shall be deemed denied. Cirrus reserves the right to amend and/or supplement this Answer.

## DEFENSES

Without admitting any wrongful conduct on the part of Cirrus and without conceding that Cirrus has the burden of proof on any of the following defenses, Cirrus asserts the following defenses to the Complaint and reserves the right to add, alter, and/or amend its defenses as the course of discovery so requires.

### First Defense
### (Failure to State a Claim)

The Plaintiff's claims for relief are barred, in whole or in part, because they fail to state a claim against Cirrus upon which relief may be granted.

### Second Defense
### (Failure to Plead with Particularity)

The Plaintiff's claims are barred, in whole or in part, because the actual fraudulent transfer allegations have not been pled with particularity as required by Rule 9 of the Federal Rules of Civil Procedure, incorporated by Rule 7009 of the Federal Rules of Bankruptcy Procedure.

### Third Defense
### (Reasonably Equivalent Value)

The Plaintiff's claims are barred, in whole or in part, because Cirrus, in good faith, exchanged reasonably equivalent value or fair consideration in connection with the Aircraft Purchase Agreement dated August 28, 2019, including but not limited to the transfer of the Cirrus Vision SF50 aircraft, and in connection with the Cirrus Aircraft Order Form dated August 29, 2019, including but not limited to the transfer of the Cirrus SR22T aircraft.

### Fourth Defense
### (Mere Conduit)

The Plaintiff's claims are barred, in whole or in part, because Cirrus acted as a mere conduit for the transfers. Cirrus had no control over the funds transferred to it and acted in good faith.

Cirrus was directed to provide the value to certain parties without any discretion on who to provide the value to.

### Fifth Defense
### (Duplicative Recovery)

Any recovery or judgment against Cirrus must be reduced, diminished, and/or barred to the extent the Plaintiff seeks, has sought, or has recovered overlapping or duplicative recovery to the various claims against Cirrus.

### Sixth Defense
### (Unjust Enrichment)

The Plaintiff's claims are barred, in whole or in part, because any recovery by the Plaintiff against Cirrus would constitute unjust enrichment.

### Seventh Defense
### (Look-back Period)

Plaintiff's claims are barred, in whole or in part, because the transfers occurred outside of the two-year look-back period in effect under Section 548(a) of the Bankruptcy Code.

### Eighth Defense
### (Solvency)

Plaintiff's claims are barred, in whole or in part, because the Debtor was solvent at the time of the transfers in question.

### Ninth Defense
### (Statute of Limitations)

Plaintiff's claims are barred, in whole or in part, because the claims are outside the applicable statute of limitations.

### Tenth Defense
### (No Transfer)

Plaintiff's claims are barred, in whole or in part, because there was no avoidable transfer. In other words, the Debtor, or its alter ego(s), paid Cirrus but the Debtor, or its alter ego(s), also received the aircraft, which were of reasonably equivalent value to the amounts paid to Cirrus.

### Eleventh Defense
### (Choice of Law)

Plaintiff's claims are barred, in whole or in part, because the law that Plaintiff alleges applies does not apply.

### Twelfth Defense
### (Indispensable Parties)

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to name indispensable parties. Namely, and without prejudice, Plaintiff has failed to join Aviation Trust Company LLC or Amazing Sky Aviation LTD.

### <u>ADDITIONAL DEFENSES</u>

By designating the aforementioned defenses, Cirrus does not in any way waive or limit any defenses which are or may be raised by their denials and averments. These defenses are pled in the alternative, and are raised to preserve the rights of Cirrus to assert such defenses, and are without prejudice to Cirrus' ability to raise other and further defenses. Cirrus expressly reserves all its rights to re-evaluate its defenses and/or assert additional defenses upon discovery and review of additional documents and information, upon the development of other pertinent facts, and/or during pretrial proceedings in this action.

Dated: April 15, 2024

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Richard J. Bernard*
Richard J. Bernard (CT Bar No. 413177)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 248-3140
Facsimile: (212) 248-3141
Email: richard.bernard@faegredrinker.com

-and-

Josh Peterson
2200 Wells Fargo Center
90 S. 7th Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
Email: josh.peterson@faegredrinker.com

-and-

Jaclyn C. Marasco
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 467-4200
Facsimile: (302)
Email: jaclyn.marasco@faegredrinker.com

*Counsel to Cirrus Aircraft*